The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Febronio Angel LICEA, Defendant–Appellee.

No. 95SA361.

Supreme Court of Colorado, En Banc.

June 17, 1996.

Peter F. Michaelson, District Attorney, Fifth Judicial District, F. Michael Goodbee, Chief Deputy District Attorney, Jude M. Koenig, Deputy District Attorney, Eagle, for Plaintiff–Appellant.

Brett Steven Heckman, Heckman & O'Connor, P.C., Vail, for Defendant–Appellee.

Justice MULLARKEY delivered the Opinion of the Court.

Pursuant to C.A.R. 4.1, the prosecution brings this interlocutory appeal from a district court order suppressing evidence seized after a search of the defendant's vehicle. We reverse. Febronio Angel Licea, the defendant, was charged by information on April 5, 1995, with one count of unlawful use of a schedule II controlled substance (cocaine),[1] one count of possession with intent to distribute marijuana,[2] and one special offender count for possessing over one hundred pounds of marijuana.[3] The charges were bound over to the district court on April 24, 1995.

On July 13, 1995, Licea moved to suppress all evidence seized and all statements obtained. In response, the prosecution filed a motion for specificity, which was denied after a hearing on July 17, 1995. The trial court, however, ruled that the prosecution would be allowed to re-open the suppression hearing if necessary. Licea's suppression motion proceeded to a hearing on July 20, 1995, and a second hearing was held on September 14, 1995. Subsequently, the district court issued an order suppressing the marijuana seized from Licea's automobile. A statement made by Licea was also suppressed because the court found it tainted by the invalid seizure.

The prosecution filed this interlocutory appeal to this court challenging both the denial of its motion for specificity and the suppression of evidence obtained from Licea's automobile. The prosecution contends that Licea's motion to suppress was not sufficiently detailed and that Licea consented to the search of his automobile. We agree in part and hold that the trial court erred in granting the suppression motion. We find the denial of the motion for specificity to be harmless.

I.

At approximately 4:00 a.m. on March 31, 1995, Licea knocked on the door of a motel in Vail, Colorado. Licea stated that his car had been run off the road and that he was being chased by six to ten people, a woman with a drug-sniffing dog, and a bulldozer with a light bar similar to that of an emergency vehicle. Licea was admitted into the motel and allowed to use the telephone. He then called the sheriff's office and stated that he was in danger. An officer immediately responded to Licea's call.

Upon arrival at the motel, the officer noticed that Licea appeared to be intoxicated by drugs and/or alcohol. Licea was frightened and hyperactive. His pupils were enlarged, he sniffed through his nose, and he had white froth at the corners of his mouth. However, Licea did not appear disoriented. He repeated his story to the officer. The officer observed that Licea was bleeding from a cut on his hand, that he had abrasions on his knees, and that his pants were scuffed and covered with weeds.

After conducting a patdown search to confirm that Licea's bulging front pocket, consistent with Licea's explanation, contained only pocket change, the officer requested identification. During the search of his wallet Licea displayed $280 in bills, but he did not have a driver's license. Knowing that a convenience store in a nearby town had recently been

1. § 18–18–404, 8B C.R.S. (1986).

2. § 18–18–406, 8B C.R.S. (1986).

3. § 18–18–407, 8B C.R.S. (1986).

burglarized, and that blood and broken glass had been found at the scene of that crime, the officer then detained Licea for both investigation of burglary and for protective custody.

Licea was placed in the officer's car and taken to a local medical center for treatment. During the 25 to 30 minutes he was in transport, Licea repeated his story without any questioning from the officer. Upon arriving at the medical center, he was treated for approximately 45 minutes and questioned only for the purpose of providing medical treatment. Licea was then transported to the sheriff's office at the Eagle County Correction Facility. During that time Licea continued to relate the story underlying his original call to the sheriff. Licea then offered to help officers find the car he had abandoned near the motel.

Following Licea's directions, officers eventually found a vehicle parked partially in the traveling portion of the road. Licea identified the car as his, and gave the officers verbal consent to inspect it. Another officer was called to guard the vehicle and tow it to the sheriff's office while Licea continued the trip to Eagle. During both transports and while receiving medical treatment, two officers and an observer were present with Licea.

Upon arriving at the sheriff's office Licea was booked for protective custody. He was brought into a windowed conference room with two officers at the sheriff's office, where he verbally gave permission to search his car and asked the officers to retrieve several personal items for him. Licea then signed a consent containing authorization "to conduct a complete search of my vehicle and its contents." Several minutes later, at approximately 8:00 a.m., he was advised of and waived his *Miranda*[4] rights. Licea appeared to understand both the advisal and the consent. He was then interviewed for approximately one hour in the presence of three officers.

During the interview Licea denied any knowledge of the burglary and denied any possession of contraband or drugs, but he told the officers about prior drug transportation activities in which he had been involved. Licea specifically mentioned that a prior arrest involved drugs hidden behind the driver's door panel of his car. Licea remained hyperactive during the interview, but he did not appear disoriented. He did, however, misidentify the make and model of his car and mispronounce the names of several types of liquor. He related his original story, then announced that he was tired and wanted to sleep.

At approximately 9:00 a.m., officers searched Licea's vehicle and found several bricks of marijuana behind the driver's door panel. The search was stopped. At approximately 9:30 a.m., Licea was arrested for possession of marijuana. Officers obtained a search warrant for his car and a warrant for blood samples. During a subsequent search, conducted at approximately 11:30 a.m., officers retrieved 110 pounds of marijuana from Licea's car. Licea was booked on the drug charges. He later asked whether the "kilos" had been found and stated that they were for his personal use. Because Licea's blood samples did not confirm the presence of cocaine, the initial charge of possession of cocaine was dropped. Licea was not charged with the burglary.

The district court found that the initial inspection of Licea's vehicle was validated by the need to secure it and remove it from the highway, and that there was no interrogation during Licea's transports and medical treatment. The district court concluded, however, that Licea's consent to search was not voluntary. All evidence arising from the search of his vehicle, including the marijuana and Licea's statement about his "personal use" of that marijuana, was therefore suppressed.

Claiming that Licea's suppression motion was not sufficiently detailed, and that Licea's consent to a search of his automobile was voluntarily given under the totality of the circumstances, the prosecution appeals the order suppressing the marijuana.

## II.

Initially, the prosecution claims that the trial court abused its discretion in denying

---

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the motion for specificity because Licea's suppression motions were factually and legally insufficient. Licea claims that this argument is moot because the trial court did not rule on any argument other than lack of voluntary consent, and the prosecution had ample notice of that issue.

■ A motion to suppress fruits of search should be filed prior to trial and be adequately descriptive so that both the prosecution and the court will be on notice of the issues to be decided. *Cummings v. People,* 785 P.2d 920, 923 (Colo.1990). Here the trial court found that the suppression motions were minimally sufficient. Although it denied the prosecution's motion for specificity, the trial court gave the prosecution an option to reopen the suppression hearing. The stated purpose of the court's ruling was to permit the prosecution to be fully advised of the defendant's argument and to have the opportunity to present all relevant evidence and argument. The original hearing was held on July 17, 1995, and it was reopened for a second hearing on September 6, 1995. Under these facts, any error in denying the motion for specificity was harmless. The prosecution has not demonstrated any prejudice and we decline to overturn the trial court's ruling denying the prosecution's motion for specificity.

### III.

### A.

■ Before analyzing the merits of the suppression order, we briefly set forth the applicable general principles. The Fourth Amendment to the United States Constitution and Article II, Section 7, of the Colorado Constitution prohibit warrantless searches of a person's home or property. *See Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 2797–98, 111 L.Ed.2d 148 (1990); *People v. Hopkins,* 870 P.2d 478 (Colo.1994). A warrantless search may be constitutionally justified by a consent to search, but only if that consent is voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 243, 93 S.Ct. 2041,

2056, 36 L.Ed.2d 854 (1973); *People v. Drake,* 785 P.2d 1257, 1265 (Colo.1990). A consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker" and not the result of circumstances where "his will has been overborne and his capacity for self-determination critically impaired." *Schneckloth,* 412 U.S. at 225, 93 S.Ct. at 2047; *People v. Helm,* 633 P.2d 1071, 1077 (Colo.1981). Voluntariness is to be assessed by considering the totality of the circumstances. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–48; *Helm,* 633 P.2d at 1077. The burden is on the People to show by clear and convincing evidence that the defendant's consent was voluntarily given. *People v. Carlson,* 677 P.2d 310, 318 (Colo. 1984). We must defer to the trial court's findings on the factual issue of voluntariness unless its findings are clearly erroneous, *United States v. Wright,* 932 F.2d 868, 878 (10th Cir.1991); or not supported by the record, *People v. Lowe,* 200 Colo. 470, 616 P.2d 118, 124 (Colo.1980); *see Carlson,* 677 P.2d at 318. In this case a ruling that Licea did not voluntarily consent to the search of his vehicle was clearly erroneous and is not supported by the trial court's findings in the record.

### B.

The trial court issued a written order making findings of fact and reaching the following relevant conclusions of law:

The first search[5] of the vehicle when it had been towed to the detention facility was presumptively invalid as it was not pursuant to a warrant or probable cause. The People rely on the oral and written consents. The question is whether those consents were voluntarily given under the totality of the circumstances.

Defendant himself was young, chemically messed up enough to deserve protective custody, confused and subjected to four hours of restrictions on his liberty. It was now about 8:00 a.m. He was in the detention facility. He had not been advised of his constitutional rights. He advised the

---

**5.** The trial court's reference to the "first search" is not to the brief initial roadside search conducted when Licea accompanied the police to find his car. Rather, the trial court refers to the search conducted at the detention center after Licea had consented to the search.

officers that he would be able to answer better after sleep. He considered himself to be the victim throughout. The effects of all this gradually wore him down to where he stopped talking solely about his bizarre story but began to tell of drug running and eventually his personal use of bricks of marijuana.

The People, therefore, have not overcome by clear and convincing evidence the presumed invalidity of the search by showing clearly and convincingly that Defendant's consent to search was voluntary. The totality of the circumstances indicates the contrary. The search was therefore objectively unreasonable. The marijuana thus seized must be suppressed. This seizure was required for the probable cause determination underlying the search warrant so the marijuana seized thereby must also be suppressed. Finally, the "personal use" statement was clearly volunteered but was a product of the arrest which was itself tainted by the invalid seizures. This statement must therefore also be suppressed.

As indicated by the trial court's ruling quoted above, the court stated the proper legal test. That is, whether, under the totality of the circumstances, the defendant voluntarily consented to the police search of his vehicle. Although it articulated the correct standard, the court actually applied an erroneous standard because the facts it found to be dispositive do not address the voluntariness of Licea's consent but rather concern whether Licea's consent was knowing and intelligent.

The same error was found by the court in *Helm*, 633 P.2d 1071. In that case we reversed a trial court's suppression order and very carefully identified the difference between a voluntary act and an act that is done knowingly and intelligently. *Helm* involved the defendant's consent to a roadside sobriety test. We discussed *Schneckloth* and overruled or limited several of our prior cases which expressly or implicitly stated that consent to search must be given not only voluntarily, but also knowingly and intelligently. *Helm*, 633 P.2d at 1076. Of particular importance here is our declaration that knowledge of the right to consent cannot be used by a trial court as a necessary prerequisite to finding a valid consent under the totality of the circumstances. *Id.* at n. 7.

In *Helm*, we assessed the facts under the totality of the circumstances and concluded that the defendant voluntarily consented to the search. We recognized that the voluntariness analysis includes consideration of the defendant's personal characteristics and the circumstances of the search. *Id.* at 1077. Our reversal of the lower court rested primarily on two factors. First, we held that the police had no duty to advise the defendant that he could refuse to consent. Second, we found no evidence of police coercion which "overbore the will of the defendant." *Id.* at 1077. We also held that *Miranda* warnings were not required before the police requested the defendant's consent to search even though the defendant was in custody. *Id.* Finally, we considered the defendant's intoxicated state, his age (47 years old) and his lack of formal education. *Id.* Those facts, whether considered individually or cumulatively, did not negate the defendant's consent. *Id.*

█ Reviewing the trial court's ruling in light of *Helm*, we reach the same result as we did in that case. As in *Helm*, there is no evidence of police promises or tactics which overbore Licea's will. Also as in *Helm*, Licea's consent is not rendered involuntary by the fact that he was in custody and was not advised of his constitutional rights before the officers requested his consent to search. Finally, the trial court relied on Licea's youth (18 years old) and the fact that he was "chemically messed up" and tired. We see no difference of any legal significance between these facts and the defendant's personal characteristics in *Helm*. In the absence of evidence that Licea did not understand the request put to him or that police coercion overbore Licea's will, the totality of the circumstances does not support a finding that Licea's consent to search was involuntary.

IV.

For these reasons, we reverse the trial court's order suppressing the evidence ob-

tained as a result of the automobile search. The case is remanded for further proceedings consistent with this opinion.