The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Cristobal MAGALLANES–ARAGON,
Defendant–Appellee.

No. 97SA161.

Supreme Court of Colorado,
En Banc.

Nov. 17, 1997.

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coates, Chief Appellate Deputy District Attorney, Everett Engstrom, Deputy District Attorney, Denver, for Plaintiff–Appellant.

Kenneth R. Daniels, Denver, for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

In this interlocutory appeal brought pursuant to C.A.R. 4.1, the prosecution seeks review of an order by the District Court of the City and County of Denver suppressing drug evidence found in the automobile of the defendant, Cristobal Magallanes–Aragon. The trial court determined that Magallanes–Aragon did not knowingly and intelligently consent to a search of the vehicle and ordered the suppression of the evidence. We hold that a trial court must consider the relationship between police conduct and a defendant in deciding whether a consent to search is voluntary. We conclude that the trial court relied exclusively upon the defendant's state of mind and did not determine whether the police conduct was intrusive, overbearing, or coercive. Thus, the trial court applied an erroneous legal standard in evaluating the voluntariness of the consent. We reverse and remand the case to the trial court with directions that it make additional findings of fact and reconsider the voluntariness issue under the appropriate legal standard.

## I.

At approximately 10:00 p.m. on February 11, 1997, two officers of the Denver Police Department, Detective Snow and Detective Keckter, began a surveillance of the Motel 6 at 3050 West 49th Avenue. The officers routinely observed the motel for possible criminal activity because they had discovered from past experiences that narcotics traffickers frequently stayed there.

A short time later, two men, later identified as Magallanes–Aragon and a codefendant, Agustin Prieto–Bailon, pulled up to the motel office in an older model Buick with Iowa license plates, registered for a room, and parked in a courtyard area nearby.

Prieto–Bailon retrieved a bag from inside the trunk, closed the trunk, then lifted up on it several times to insure that it was locked. Before the two men reached their third-floor room, Prieto–Bailon looked down at the Buick "as if he was checking the car."

At the motel office, Detective Keckter learned that the men paid for the room with cash, and that the person registering the room, under the name Prieto, displayed identification from Chihuahua, Mexico. A computer check of the license plates of the Buick revealed that the car was registered to a person named Magallanes, who resided in Des Moines, Iowa.

Based upon this information, Detectives Snow and Keckter decided to contact the two men, and requested that a Spanish-speaking officer, Detective Rael, respond to the location. The three officers, dressed in plain clothes and wearing badges, knocked on the motel room door and identified themselves as police officers.

Detectives Rael and Snow testified that Magallanes–Aragon and Prieto–Bailon invited the officers into the motel room, and subsequently consented to a search of the motel room and the Buick.[1] After the search of the Buick proceeded to its trunk, Detective Snow noticed that the spare tire appeared to be unusually large compared to the tires on the car, and that it was inordinately heavy. Detective Snow also testified that he heard objects rattling inside the tire, and that, when he pushed on the valve stem, he smelled the odor of marijuana. Upon cutting open the tire, the officers found approximately 43 pounds of marijuana.

Magallanes–Aragon was charged by information with one count of possession of marijuana with intent to distribute,[2] and one count of possession of more than eight ounces of marijuana.[3] At the suppression hearing, the trial court found that, when the officers knocked on the door of the motel room, they had "suspicion," but not probable cause.[4] The court also found that Magallanes–Aragon did not "knowingly and intelligently waive his right to refuse the search" of the Buick, "even though he was advised otherwise." The court therefore suppressed the evidence found in the trunk of the Buick. The prosecution appeals the suppression order, claiming that the trial court applied an erroneous legal standard in evaluating the voluntariness of Magallanes–Aragon's consent.

## II.

We begin by reviewing the appropriate legal standard for deciding whether a consent to search is voluntary. A warrantless search is constitutionally justified when it is conducted pursuant to voluntary consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *People v. Drake,* 785 P.2d 1257, 1265 (Colo.1990). Consent to search is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," and not the result of circumstances which overbear the consenting party's will and critically impair his or her capacity for self-determination. *Schneckloth,* 412 U.S. at 225, 93 S.Ct. at 2046–47; *accord, e.g., People v. Licea,* 918 P.2d 1109, 1112 (Colo.1996). The prosecution bears the burden of proving by clear and convincing evidence [5] that a con-

---

1. The search of the motel room, which included a search of Magallanes–Aragon's and Prieto–Bailon's bags, uncovered no evidence of contraband. Rael testified that the request to search the Buick was made contemporaneously with the request to search the motel room. Snow testified that Rael obtained consent to search the Buick after the officers had searched the motel room.

2. *See* 18–18–406(8)(b), 6 C.R.S. (1997).

3. *See* 18–18–406(4)(b), 6 C.R.S. (1997).

4. Magallanes–Aragon argues that the trial court erred by concluding that the officers' initial con-

tact with Magallanes–Aragon was constitutionally justified. This issue is not properly before us in this interlocutory appeal and we do not address it. *See People v. Weston,* 869 P.2d 1293, 1297 (Colo.1994) ("[I]f the trial court resolves a suppression issue against the defendant, we have no jurisdiction to address it in an interlocutory appeal.").

5. The prosecution argues that it should only have to prove the voluntariness of a consent to search by a "preponderance of the evidence." Specifically, the prosecution asserts that the voluntariness of confessions need only be proven by a preponderance of the evidence, and argues that

sent to search was voluntarily given. *See Licea*, 918 P.2d at 1112.

 A consensual search is involuntary if it is "'the result of duress or coercion, express or implied, or any other form of undue influence exercised against the defendant.'" *People v. Cleburn*, 782 P.2d 784, 787 (Colo.1989) (quoting *People v. Thiret*, 685 P.2d 193, 201 (Colo.1984)). Other forms of undue influence exercised against a defendant include promises, threats, or intrusive police conduct. *See People v. Johnson*, 865 P.2d 836, 845 (Colo.1994). Thus, before a court may conclude that consent was voluntarily given, it must find no objective evidence of coercion, duress, deception, promises, threats, intrusive conduct or other undue influence by the police, which critically impaired the defendant's judgment. *See Schneckloth*, 412 U.S. at 228–29, 93 S.Ct. at 2048–49 (the voluntariness requirement of the Fourth Amendment is intended to insure that consent searches are "free from any aspect of official coercion"); *Capps v. People*, 162 Colo. 323, 327, 426 P.2d 189, 191 (1967) (consent is voluntary "if the [trial] court finds no evidence showing coercion or duress").[6] After considering the evidence of police coercion and the defendant's particular subjective characteristics, the court must apply an objective test and determine whether the police conduct could reasonably have appeared to the defendant to be coercive. *See United States v. Mendenhall*, 446 U.S. 544, 558–59, 100 S.Ct. 1870, 1879–80, 64 L.Ed.2d 497 (1980). It is the relationship between the police conduct and a person in the defendant's circumstances, and with the defendant's particular characteristics, which is critical to this determination. *See People v. Diaz*, 793 P.2d 1181, 1186 (Colo.1990) (affirming trial court finding that consent was involuntary because the request to search, which was in the form of a question, would have been believed to be an order by one in the defendant's position of having been confronted by three police officers and asked to join them in a different part of a bar).

 The characteristics of a defendant, such as age, education, and knowledge are pertinent considerations, as are the circumstances of the search, such as its location and duration, the environment in which the defendant gives consent and the defendant's perceptions. *See People v. Milton*, 826 P.2d 1282, 1286 (Colo.1992); *Cleburn*, 782 P.2d at 787. However, when a court focuses exclusively on a defendant's characteristics and perceptions, and fails to determine whether police conduct was objectively coercive in relation to the defendant's subjective state, it applies an erroneous legal standard. *See Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990); *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir.1995) (the defendant must show more than a subjective belief of coercion), *cert. denied*, — U.S. —, 116 S.Ct. 731, 133 L.Ed.2d 682 (1996); *Capps*, 162 Colo. at 327, 426 P.2d at 191 ("[A]ll the evidence, including the various circumstances of the giving of consent, must be objectively viewed with diligent care by the trial court . . . ."); *see also Johnson*, 865 P.2d at 845 (consent voluntary because police officers did not act threateningly or intrusively, and made no promises or

---

there is no reason to hold the state to a higher burden with respect to consensual searches.

The prosecution concedes, however, that the trial court determination would, in all probability, have been the same regardless of which standard of proof was applied. We decline to reconsider our determination that the burden is on the prosecution to prove that a consent to search was voluntarily given by clear and convincing evidence in this interlocutory appeal.

**6.** In *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the United States Supreme Court made clear that "coercive police activity" which is "causally related" to a confession "is a necessary predicate to the find-

ing that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 164, 167, 107 S.Ct. at 520, 522; *see also People v. Dracon*, 884 P.2d 712, 718 (Colo.1994) ("A statement is involuntary if coercive police activity played a significant role in inducing the statement."). Although *Connelly* was not a search and seizure case, it is additional persuasive authority that a consent to search implicating the Fourth Amendment is voluntary absent evidence of coercive or deceptive police activity that overbore the defendant's will. *See generally* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 8.2(e) (3d ed.1996).

threats when requesting consent to search); *People v. Bowman,* 669 P.2d 1369, 1378 (Colo.1983) (consent voluntary because there was no evidence that the police coerced or deceived the defendant).

### III.

We next compare the findings and conclusions of the trial court to the appropriate legal standard discussed. We conclude that the trial court made insufficient findings to permit us to decide whether the consent was voluntary in this appellate review.

### A.

■ In concluding that Magallanes–Aragon did not knowingly and intelligently waive his right to refuse to consent to the search, the trial court relied upon the fact that Magallanes–Aragon was educated in Mexico and did not believe that he had a right to refuse to consent to the search. The court found that:

> This Defendant is a 29–year–old man from Mexico who works on ranches and farms. He's uneducated, educated in Mexico, not educated in the United States, and under the impression that he has no right to refuse the search.
>
> I believe the officers did everything in their mind that was absolutely proper, but looking at the totality of the circumstances ... I do not feel that this Defendant ever gave a knowing and intelligent waiver of his right to refuse the search. He was under the impression that he had to allow the search, even though he was advised otherwise by the officers, and I cannot find that there was a knowing and intelligent waiver of his right to refuse the search.

Aside from finding that three police officers initially contacted Magallanes–Aragon and Prieto–Bailon, and that the officers "did everything in their mind that was absolutely proper," the trial court made no findings with respect to the conduct of the officers.

By focusing exclusively on Magallanes–Aragon's subjective characteristics and perceptions, the court failed to adequately consider whether there was objective evidence of overbearing, intrusive, coercive or deceptive behavior by the police. Thus, the court did not determine, relative to Magallanes–Aragon's particular characteristics and circumstances, whether the police conduct was overbearing and critically impaired Magallanes–Aragon's capacity for self-determination. Because its findings indicate that the trial court regarded facts relating to the subjective state of the defendant as dispositive, the court applied an erroneous subjective standard. *See Licea,* 918 P.2d at 1113.

■ The trial court may have also thought that Magallanes–Aragon's lack of knowledge of his right to refuse consent, standing alone, negated the voluntariness of that consent. The court found that Magallanes–Aragon "was under the impression that he had to allow the search, even though he was advised otherwise by the officers," and cited this lack of knowledge as the reason for the suppression order. Although a defendant's subjective belief that he may not refuse consent is a factor that may be considered in assessing voluntariness, it is not a determinative factor. *See Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. at 2047–48 (the "state of the accused's mind" and his knowledge of the right to refuse consent are relevant, but not determinative factors in assessing voluntariness); *Licea,* 918 P.2d at 1113 ("[K]nowledge of the right to consent cannot be used by a trial court as a necessary prerequisite to finding a valid consent under the totality of the circumstances."); 3 Wayne R. LaFave, *Search and Seizure* 8.2(i), at 686 (3d ed. 1996) ("[V]alid consent may be established without a showing that the police advised the consenting party of his Fourth Amendment rights or that this party was otherwise aware of those rights.").

■ The legal standard stated by the trial court was whether the consent was knowing and intelligent. We have previously explained that there is a distinction between a voluntary act and an act done knowingly and intelligently. *See Licea,* 918 P.2d at 1113; *People v. Helm,* 633 P.2d 1071, 1076 (Colo.1981). Neither an intelligent consent nor knowledge of the right to refuse to consent are essential to a voluntary consent, although both are relevant considerations.

The essential consideration in determining voluntariness of a consent to search is the impact of overbearing, coercive, or deceptive police conduct on a person with the knowledge and particular characteristics of the defendant.

The trial court focused exclusively on the defendant's perceptions and applied a subjective standard of whether the consent was knowing and intelligent. Accordingly, the trial court order suppressing the drug evidence must be reversed.

### B.

■■■ The prosecution argues that the trial court's findings are sufficient to permit us to hold that Magallanes–Aragon voluntarily consented to the searches. We conclude that these findings are inadequate to allow us to decide the issue on appellate review.

■■■ The voluntariness of a consent to search is a question of fact to be determined by the trial court. *See People v. Drake*, 785 P.2d 1257, 1266 (Colo.1990). We may decide, on appellate review, whether a consent was voluntarily given if the record clearly contains no evidence to support the trial court's determination. *See, e.g., Licea*, 918 P.2d at 1113; *Helm*, 633 P.2d at 1077. However, if there is evidence in the record to support the trial court's determination, we must remand for additional findings and a re-evaluation of voluntariness in light of those findings. *See People v. Trujillo*, 938 P.2d 117, 125 (Colo. 1997); *People v. Morales*, 935 P.2d 936, 942 (Colo.1997).

The prosecution contends that remand is unnecessary because the trial court found that the officers' actions were "absolutely proper." The prosecution therefore maintains that the trial court believed the officers' description of the circumstances surrounding the consent to search, and that this version provided no evidence to support the conclusion that Magallanes–Aragon's consent was involuntary. We disagree.

First, had the trial court found that the officers acted "properly," that finding alone would be insufficient to support the conclusion that Magallanes–Aragon voluntarily consented to the search. A trial court must determine that police conduct does not reasonably appear to a person with the defendant's characteristics to be overbearing, coercive, or deceptive before it can conclude that a consent to search was voluntarily obtained. By determining that police officers acted "properly," the trial court did not address the reasonable effect, if any, of the police conduct on a person in the defendant's position. The trial court may have simply meant that the actions of the police preceding the request for consent to search were lawful and based upon legitimate concerns. Whether the court objectively considered the police officers' conduct, and considered the nexus between that conduct and the defendant, is thus not apparent from a finding that the police acted "properly." *See* 3 Wayne R. LaFave, *Search and Seizure* 8.2(b), at 644–45 (3d ed.1996) (noting that the presence of many officers, display of weapons, and time of day are factors that may render involuntary a consent to search). Thus, the trial court did not consider whether the police conduct was overbearing or coercive. Similarly, this finding does not necessarily imply that the trial court discredited the defendant's testimony about the overbearing and coercive aspects of the encounter.

Moreover, the record does not support the assertion of the prosecution. The trial court did not precisely find that the officers' actions were "absolutely proper." Rather, the court found that the officers "did everything in their mind that was absolutely proper." Clearly, police officers' subjective belief in the propriety of their actions is an inadequate ground for concluding that they acted reasonably under the Fourth Amendment. *See Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." (quoting *Scott v. United States*, 436 U.S. 128, 136, 98 S.Ct. 1717, 1722–23, 56 L.Ed.2d 168 (1978))).

The transcript of the suppression hearing reveals that the parties disputed many of the

circumstances surrounding the encounter between the officers and Magallanes–Aragon, including (1) the number of officers inside the motel room at the time the consent to search was sought, (2) whether the detectives' tone of voice was "relaxed" or "demanding," (3) the duration of the motel room search, (4) whether the police officers' request for consent to search was in the nature of an order, (5) whether Magallanes–Aragon was fully clothed at the time he gave consent, and (6) whether Magallanes–Aragon assisted in the search by handing the keys to the Buick over to Detective Snow. In addition, the trial court made no finding as to whether Magallanes–Aragon was in custody at the time the police sought consent to search. *See People v. Breidenbach,* 875 P.2d 879, 890 (Colo.1994) (although the fact that the defendant is in custody does not, standing alone, render his consent involuntary, it is a factor to be considered).

Because the trial court failed to make findings to resolve disputed testimony in the record regarding the circumstances surrounding the consent to search the motel room and the automobile, our appellate function is hindered. *See People v. Sutherland,* 886 P.2d 681, 688 (Colo.1994). This case must therefore be remanded to the trial court to allow that court to reconsider the voluntariness of the consent under the correct legal standard.

### IV.

We reverse the trial court order suppressing the drug evidence found in Magallanes–Aragon's automobile, and remand the case for additional findings. On remand, the trial court is directed to make findings as to whether there is any evidence of intrusive, overbearing, or coercive police conduct, and, if there is, whether the impact of this conduct rendered the defendant's consent to search involuntary.

