**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Marvin A. OUTLAW, Defendant–Appellant.**

**No. 98CA0160.**

Colorado Court of Appeals, Div. IV.

May 20, 1999.

As Modified on Denial of Rehearing July 22, 1999.

Certiorari Granted April 24, 2000.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Marvin A. Outlaw, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a controlled substance. We affirm the judgment of conviction but remand for correction of the mittimus.

Defendant and three others were gathered in a "huddle" in front of a bar, in a neighborhood known for drug activity. When the group noticed a police car at a nearby traffic signal, they started walking away.

The two police officers in the car drove toward the group and pulled onto the sidewalk. As the group continued walking, the officers drove on the sidewalk behind them, trailing by five to seven feet. The officer driving the police car noticed that defendant's left hand was clenched, as if he might be holding something.

After following the group on the sidewalk for twenty to thirty feet, the driver pulled the police car back onto the street. He continued driving near the sidewalk and abreast of defendant, in the lane of oncoming traffic.

After driving another fifteen to twenty feet, the officer pulled the car to the curb. He then either "requested" or "commanded" that defendant approach the police vehicle.

As defendant approached, the officer observed a plastic bag partially protruding between the fingers of defendant's clenched hand. When defendant was within a few feet of the vehicle, he made a "sweeping motion" with his arms, after which his hands were empty.

The officer and his partner stepped out of the police car and moved defendant to the back of the vehicle. They found two rocks of crack cocaine in plastic bags on the ground near where defendant had made the sweeping motion.

I.

Defendant first contends the trial court erred when it failed to suppress the evidence of the cocaine because it was the result of an illegal seizure by the police. He asserts the trial court incorrectly concluded that his encounter with the police was consensual or, in the alternative, that it was an investigatory stop supported by a reasonable suspicion of criminal activity. We are not persuaded.

The determination of precisely when a police officer's show of authority is sufficient to constitute an investigative stop is "not always an easy one" and "may be extremely close." *See United States v. Steele,* 782 F.Supp. 1301, 1309 (S.D.Ind.1992) *aff'd,* 989 F.2d 502 (7th Cir.1993); *see also People v. Cascio,* 932 P.2d 1381 (Colo.1997)(recognizing the sometimes "subtle distinction" between a consensual encounter and an investigatory stop). This case presents such a determination.

Three types of police-citizen encounters have been identified for purposes of a constitutional analysis: 1) arrests, 2) investigatory stops, and 3) consensual interviews. Both arrests and investigatory stops are seizures implicating the constitutional protections of the Fourth Amendment. A consensual interview, on the other hand, is not a

seizure and thus does not implicate these protections. *See People v. Paynter,* 955 P.2d 68 (Colo.1998); *see also People v. Johnson,* 865 P.2d 836 (Colo.1994)(Colorado case law consistent with recent United States Supreme Court decisions).

■ A seizure does not necessarily occur when a police officer approaches an individual on the street or in another public place. *See Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *see also People v. Paynter, supra.* Only when a police officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen does a "seizure" occur. *People v. Melton,* 910 P.2d 672 (Colo.1996).

■ In a consensual encounter, a police officer seeks the voluntary cooperation of an individual by asking non-coercive questions. The test for determining if an encounter between a police officer and an individual is consensual is whether a reasonable person under the circumstances would believe he or she was free to leave or to disregard the officer's request for information. *People v. Paynter, supra; see also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

■ A police-citizen encounter does not become a seizure simply because citizens may feel an inherent social pressure to cooperate with the police. While most citizens will respond to a police request, the fact that people do so, even without being told they are free not to respond, does not eliminate the consensual nature of the response. Rather, a court must objectively consider the totality of the circumstances to determine whether the police exercised force or authority, or whether the police merely approached to conduct a consensual interview. *People v. Paynter, supra; People v. Melton, supra.*

■ Here, the officer drove the police car behind defendant and the others for twenty to thirty feet on the sidewalk, and he then drove abreast of defendant for an additional fifteen to twenty feet before speaking to him. Although the officer indicated that he initially decided to approach the group because they appeared to be loitering, they began to walk away as soon as they noticed the police car.

The officer could not remember whether he "requested" or "commanded" defendant to approach the police car. However, in the context of the officer's preceding conduct, even a "request" to approach was a show of some authority, and a reasonable citizen would have felt some pressure to comply.

Nevertheless, in determining whether a seizure occurred in this case, we do not write on a clean slate. Rather, the United States Supreme Court has provided examples of the type of conduct that indicate a "seizure" for constitutional purposes:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.... *In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.*

*United States v. Mendenhall, supra,* 446 U.S. at 554–55, 100 S.Ct. at 1877, 64 L.Ed.2d at 509–10. (emphasis added)

In *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), when the defendant saw a patrol car nearing the corner where he stood, he turned and ran. The police officers decided to follow to see where the defendant was going. The cruiser quickly caught up to the defendant and drove alongside him. As they did so, they saw the defendant discard a number of packets, which proved to be narcotics.

The Supreme Court in *Chesternut* concluded that the defendant was not "seized" for constitutional purposes before discarding the drugs. The court noted that the cruiser had not blocked the defendant's ability to leave. In addition the police had not activated sirens or flashers, displayed any weapons, or "commanded" the defendant to halt.

In *People v. Cascio, supra*, police officers parked behind an illegally parked van, trained their spotlight on it, approached with their flashlights, and asked permission to search the van. Our supreme court concluded that, because the police conduct was not "so intimidating as to demonstrate that a reasonable person would believe that he is not free to leave if he does not respond," no seizure had occurred. *People v. Cascio, supra*, 932 P.2d at 1388.

The supreme court reached a similar conclusion in *People v. Paynter, supra*. The police parked behind the defendant's vehicle, which was legally parked, activated a side spotlight, approached, asked what he was doing, and asked for identification. Among other factors, the court found it significant that the police officer had not drawn a weapon and had requested rather than demanded identification. *See also People v. Johnson, supra* (speaking in conversational tones, officers asked rather than demanded identification); *People v. Melton, supra* (police asked rather than demanded the defendant's name and address and the encounter lasted only a few seconds); *cf. People v. Padgett*, 932 P.2d 810 (Colo.1997).

Here, as already noted, the police officer could not recall whether he "requested" or "commanded" defendant to approach. Thus, it was unclear from this testimony what actually occurred.

However, defendant had the burden of proving by a preponderance of the evidence whether and when a "seizure" occurred. *See United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir.1994)("[The defendant] bears the burden of proving whether and when the Fourth Amendment was implicated (i.e., the point at which he or his luggage was 'seized.' ")); *see also Henderson v. People*, 879 P.2d 383 (Colo.1994); *People v. Suttles*, 685 P.2d 183 (Colo.1984); *see generally* 5 W.R. LaFave, *Search & Seizure* § 11.2(b) at 44–45 (3d ed. 1996)("The defendant also has the burden of proof as to whether ... a seizure occurred."); *but cf. People v. Magallanes–Aragon*, 948 P.2d 528 (Colo.1997) (burden of proof on prosecution to establish consent given to search). Defendant offered no evidence other than the testimony of the police officers.

Furthermore, the officer testified that when he spoke to defendant, it was in a calm, soft, conversational voice. The conversation itself was brief.

Finally, the officers did not exit their vehicle until after the driver had seen the plastic bag in defendant's hand and defendant had made the "sweeping motion" with his hands. Defendant does not dispute that, once the officer saw the plastic bag in defendant's hand, he had an articulable suspicion that defendant was in possession of drugs.

■ The police officer did testify that it was his intent, even before seeing the plastic bag, to determine what was in defendant's hand. However, an officer's subjective suspicions and intent do not distinguish a consensual encounter from an investigatory stop. *See United States v. Mendenhall, supra; People v. Melton, supra*.

In sum, the trial court had the opportunity to observe the officer's demeanor, for the purpose of determining credibility, as well as his general appearance and tone of voice. The court was presented with no evidence other than the officers' own testimony, which was inconclusive as to certain critical events necessary to establish a seizure. The burden was on defendant to prove by a preponderance of the evidence that a seizure had occurred.

In the circumstances presented here, the issue is "extremely close." However, under the constraints of existing precedent, we cannot say the trial court erred in determining that, at the time the officer saw the plastic bag in defendant's clenched hand, the encounter between the police officer and the defendant was still consensual—at least for purposes of constitutional analysis. *See Michigan v. Chesternut, supra; People v. Cascio, supra; see also People v. Paynter, supra; People v. Melton, supra; cf. People v. Padgett, supra*. The court therefore did not err in refusing to suppress the evidence.

## II.

■ Defendant next asserts the trial court erred when it failed to investigate an alleged

conflict between defendant and his attorney and when it failed to advise defendant that, if he could not continue to pay his attorney, alternate counsel would be provided. Again, we disagree.

When a trial court is on notice of an asserted conflict, it has a duty to make inquiry into the propriety of continued representation. *People v. Edebohls*, 944 P.2d 552 (Colo.App.1996). If the court makes such inquiry and concludes that the attorney-client relationship has not deteriorated to the point that counsel is unable to give effective assistance, the court is justified in refusing to appoint new counsel. *People v. Rocha*, 872 P.2d 1285 (Colo.App.1993). The determination is within the court's discretion and will not be reversed absent an abuse of that discretion. *McCall v. District Court*, 783 P.2d 1223 (Colo.1989).

Here, contrary to defendant's argument, the record reflects that the court sufficiently inquired both of defendant and his attorney as to the nature of any conflicts, including the fee dispute and other allegations contained in the motions. At a conflicts hearing, defendant stated only that the attorney had represented his brother in another matter, and he otherwise made only vague references about the attorney not doing enough work on the case. Later in the same hearing, defendant expressly stated that he did not agree that there was a breakdown in the attorney-client relationship or that he and the attorney had any conflict.

The attorney stated that he and defendant had differences of opinion on the types of motions to be filed and that defendant was "uncomfortable" with his representation. He also stated that defendant's family, who apparently paid the attorney's fees, had threatened to stop paying the fees. However, no testimony was presented concerning inability to pay fees, and the attorney provided no other information in regard to conflicts or nonpayment of fees.

The trial court noted that withdrawal of counsel would require a continuance. It further observed that substitution of counsel would not solve defendant's dissatisfaction with the rule that an attorney, and not a defendant, determines motion and trial strategy. The court therefore determined that defendant had failed to show good cause and denied the motion.

Under the circumstances presented here, the trial court did not abuse its discretion is denying the motion to withdraw. *See McCall v. District Court, supra; People v. Rocha, supra.*

### III.

Defendant finally contends the trial court erred when it included on the mittimus convictions on two of the habitual criminal counts. The People acknowledge the error and concede that the mittimus should be corrected. Because counts eight and nine of the habitual criminal charge were dismissed, we agree that remand is necessary to correct the mittimus by removing those counts.

The judgment is affirmed. The cause is remanded so that the trial court may correct the mittimus by removing the convictions on counts eight and nine.

Judge RULAND and Judge KAPELKE, concur.