The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 4, 2024

## 2024COA1

**No. 22CA1409, *People v. Young* — — Regulation of Vehicles and Traffic — Alcohol and Drug Offenses — Expressed Consent for the Taking of Blood, Breath, Urine, or Saliva — Extraordinary Circumstances**

In this felony DUI case, a division of the court of appeals considers, as a matter of first impression, whether the COVID-19 pandemic constitutes an "extraordinary circumstance[]," under section 42-4-1301.1(2)(a.5)(I), C.R.S. 2023, sufficient to warrant a law enforcement officer to require a defendant to submit to a blood test in lieu of a breath test.  The division concludes that it does and affirms the judgment.

COLORADO COURT OF APPEALS     **2024COA1**

Court of Appeals No. 22CA1409
Arapahoe County District Court No. 20CR2429
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Shannon Christopher Young,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Yun and Kuhn, JJ., concur

Announced January 4, 2024

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Colorado Legal Defense Group, Alan Davis, Denver, Colorado, for Defendant-
Appellant

¶ 1 Defendant, Shannon Christopher Young, appeals his driving under the influence (DUI) – fourth or subsequent offense conviction, and contending that the trial court erroneously denied his motion to suppress his field sobriety test results as involuntary and his refusal to submit to a blood alcohol content (BAC) test. As a matter of first impression, we are asked to decide whether the COVID-19 pandemic constitutes an "extraordinary circumstance[]," under section 42-4-1301.1(2)(a.5)(I), C.R.S. 2023, sufficient to warrant a law enforcement officer to require a driver to submit to a blood test in lieu of a breath test. We conclude that it does and affirm the judgment.

## I. Background

¶ 2 In June 2020, Young rear-ended another car stopped at a red light. Two witnesses to the accident, the driver of the car Young rear-ended and an ambulance driver who was also stopped at the red light, told the responding officer that they smelled alcohol on Young's breath when they approached him following the accident. The responding officer then requested that a DUI enforcement officer respond to the scene. Based on Young's field sobriety test results and his refusal to submit to a blood draw to determine his

1

BAC, the prosecution charged him with one count of DUI – fourth or subsequent offense and one count of reckless driving.

¶ 3    Before trial, Young moved to suppress (1) his field sobriety test results, asserting that his consent to the tests was involuntary because he did not know he could refuse to take the tests; and (2) evidence of his refusal to take a blood test because the DUI officer failed to offer him a breathalyzer test in violation of the expressed consent statute, § 42-4-1301.1.

¶ 4    At the suppression hearing, the DUI officer testified that the responding officer reported that two witnesses said they smelled alcohol on Young when they approached him after the accident. The DUI officer then asked Young twice whether he would be willing to do field sobriety tests. After the second request, Young responded, "If I have to." He followed the officer to a flatter location, offered to remove his shoes, and never indicated that he did not wish to perform the tests.

¶ 5    The DUI officer could not recall whether she told Young that he did not have to complete the field sobriety tests, but she recalled advising him that the tests were voluntary. She further testified that her tone with Young was conversational, not confrontational;

she made no promises or threats to induce Young's cooperation; she did not pull her weapon or otherwise force Young to complete the field sobriety tests; and the entire interaction lasted about fifteen minutes.

¶ 6    After Young failed the field sobriety tests, the officer arrested him, explained the expressed consent statute, and offered a blood test to determine his BAC.  She explained that this offense occurred during the COVID-19 pandemic when face masks were required in public.  During this stage of the pandemic, the Aurora Police Department (APD) enacted a policy, after consultation with a physician, to only offer blood draws to determine BAC because the risk of transmitting COVID-19 during breathalyzer testing was too high.  She testified that she explained the APD's policy to Young when she asked him to take the blood test.  Instead of directly responding to her request for a blood test, Young asked for an attorney and never requested a breath test.  The officer documented Young's response as a refusal.

¶ 7    The trial court denied Young's suppression motions.  The court first found that Young voluntarily submitted to the field sobriety tests because the DUI officer told him they were voluntary,

she made no show of force to induce his cooperation, and he agreed to do them. The court noted that while the officer never directly informed Young that he could refuse the tests, the advisement was sufficient. It was evident from Young's actions that he consented to the tests, considering the totality of the circumstances.

¶ 8    Concerning the refusal, the trial court found that, given the circumstances of the COVID-19 pandemic, the APD had valid grounds to establish procedures limiting the availability of breathalyzer tests under the "extraordinary circumstances" provision of section 42-4-1301.1(2)(a.5). Thus, the officer's advisement limiting Young's testing options was consistent with the statute and did not warrant suppression of the evidence of his refusal.

II.    Voluntariness of Field Sobriety Test Results

¶ 9    Young contends that the trial court erroneously denied his motion to suppress the field sobriety test results because the DUI officer never informed him that he could refuse the tests, and therefore, his consent was involuntary. We disagree.

### A. Standard of Review and Applicable Law

¶ 10 A trial court's suppression order presents a mixed question of fact and law. *People v. Munoz-Gutierrez*, 2015 CO 9, ¶ 14. We defer to the trial court's factual findings if they are supported by the record, but we assess the legal effect of those facts de novo. *Id.* We also review a question of statutory interpretation de novo. *People v. Raider*, 2022 CO 40, ¶ 8.

¶ 11 The United States and Colorado Constitutions protect persons against unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. Field sobriety testing constitutes a full "search" in the constitutional sense of that term and can be administered when probable cause exists to arrest the driver for driving under the influence or when the driver voluntarily consents to perform the tests. *People v. Carlson*, 677 P.2d 310, 317-18 (Colo. 1984), *abrogated on other grounds as recognized in People v. Chavez-Barragan*, 2016 CO 66, ¶ 33; *see also People v. Licea*, 918 P.2d 1109, 1112 (Colo. 1996) ("A warrantless search may be constitutionally justified by a consent to search, but only if that consent is voluntarily given.").

¶ 12    When assessing whether a person's consent was voluntary, the court must apply an objective test "that takes into account the totality of the circumstances and determines whether the defendant could reasonably have construed the police conduct to be coercive." *People v. Berdahl*, 2019 CO 29, ¶ 23 (citing *Munoz-Gutierrez*, ¶ 23). Consequently, we consider the environment in which the defendant allegedly consented, the police officer's actions during the encounter, and the defendant's perceptions and characteristics, such as age, education, and knowledge. *Chavez-Barragan*, ¶ 38.

¶ 13    "The essential consideration in determining voluntariness of a consent to search is the impact of overbearing, coercive, or deceptive police conduct on a person with the knowledge and particular characteristics of the defendant." *People v. Magallanes-Aragon*, 948 P.2d 528, 533 (Colo. 1997), *abrogated on other grounds as recognized in Chavez-Barragan*, ¶ 33. Consent is involuntary when it results from duress or coercion, whether express or implied, or from any other form of undue influence exercised by the police against the defendant. *Berdahl*, ¶ 21. Undue influence can include promises, threats, and intrusive or threatening police conduct. *Munoz-Gutierrez*, ¶ 17.

6

¶ 14     While section 16-3-310(1)(b)(II), C.R.S. 2023, provides that police officers must inform suspects that they have the right to refuse to give consent to a search, an officer's failure to give this advisement is only one factor in determining the voluntariness of consent. § 16-3-310(3); *see also Munoz-Gutierrez*, ¶ 20 ("[V]oluntary consent need not be given with knowledge of the right to refuse . . . .").

## B.     Analysis

¶ 15     We begin by noting that Young does not assert that the police coerced him into performing the field sobriety tests. Rather, he contends that his consent was involuntary because the officer never told him he could refuse to do the tests. We disagree for two reasons.

¶ 16     First, the trial court credited the DUI officer's testimony that she twice advised Young that the tests were voluntary and that he completed them of his own volition. Indeed, Young does not dispute following the officer to a flatter location to perform the tests or offering to remove his shoes. We must defer to the court's finding. *See Munoz-Gutierrez*, ¶ 14.

7

¶ 17    Second, the record contains no evidence that the officer did anything to overbear Young's will, nor does it show that the sobriety tests were the product of duress, coercion, deception, or undue influence by the officer.  And even if Young believed he had no choice but to complete the sobriety tests, the officer did not cause that perception.  *See Berdahl*, ¶ 27.  Consequently, the totality of the circumstances in the record shows that Young voluntarily consented to taking the field sobriety tests and that the trial court did not err by denying his motion to suppress the test results.  *See Chavez-Barragan*, ¶ 38.

### III.    COVID-19 Pandemic Constitutes an Extraordinary Circumstance

¶ 18    Young next contends that the trial court erred by denying his motion to suppress evidence of his refusal to take a blood test to determine his BAC.  He reasons that the APD's policy limiting BAC testing to blood tests does not fall within the extraordinary circumstances exception in the expressed consent statute and, therefore, that the officer's failure to provide him a testing choice violated the statute.  We disagree.

8

## A. Expressed Consent Statute

¶ 19 Section 42-4-1301.1 provides that "[a]ny person who drives any motor vehicle upon the streets and highways . . . throughout this state shall be deemed to have expressed such person's consent to the provisions of this section." § 42-4-1301.1(1); *see also People v. Null*, 233 P.3d 670, 678 (Colo. 2010).

¶ 20 Under the statute, a police officer with probable cause to believe that a driver has committed an alcohol-related offense may require the driver to take and complete either a blood test or a breath test to determine the person's BAC. § 42-4-1301.1(2)(a)(I). If a law enforcement officer requests a test under this statute, the driver "must cooperate with the request such that the sample of blood or breath can be obtained within two hours of the person's driving." § 42-4-1301.1(2)(a)(III).

¶ 21 Generally, the driver may choose between a blood or breath test. *See* § 42-4-1301.1(2)(a)(II). However, a law enforcement officer may require the driver to submit to a different test if there are "extraordinary circumstances that prevent the completion of the test elected by the person." § 42-4-1301.1(2)(a.5)(I).

9

¶ 22    Extraordinary circumstances are those that are "beyond the control of, and not created by, the law enforcement officer who requests and directs a person to take a blood or breath test . . . or the law enforcement authority with whom the officer is employed." § 42-4-1301.1(2)(a.5)(IV)(A).  Those circumstances include, but are not limited to, "weather-related delays, high call volume affecting medical personnel, power outages, malfunctioning breath test equipment, and other circumstances that preclude the timely collection and testing of a blood or breath sample by a qualified person in accordance with law." § 42-4-1301.1(2)(a.5)(IV)(B).  The statute expressly excludes from extraordinary circumstances such things as "inconvenience, a busy workload on the part of the law enforcement officer or law enforcement authority, minor delay that does not compromise the two-hour test period . . . , or routine circumstances that are subject to the control of the law enforcement officer or law enforcement authority." § 42-4-1301.1(2)(a.5)(IV)(C).

¶ 23    A person's failure to "take and complete, and to cooperate in the completing of, the other test requested by the law enforcement officer . . . shall be deemed to be a refusal to submit to testing."

10

§ 42-4-1301.1(2)(a.5)(III); *see also* § 42-2-126(2)(h), C.R.S. 2023 (defining refusal as "refusing to take or complete, or to cooperate in the completing of, a test of the person's blood, breath, saliva, or urine" as required by the expressed consent law).

## B.    Analysis

¶ 24    Young argues that the expressed consent statute required the DUI officer to provide both testing options and that she could only invoke the "extraordinary circumstances" provision after he had selected one of the options, thereby preserving his right to choose. We are not persuaded.

¶ 25    When interpreting a statute, we first determine whether the language is plain and unambiguous, giving effect to the express language of the statute and consistent, harmonious, and sensible effect to all its parts. *Raider*, ¶ 9. While we must give effect to the statute's plain and ordinary meaning, the legislature's intention will prevail over a literal interpretation of the statute that leads to an absurd result. *Id.*

¶ 26    When directed by a law enforcement officer to submit to a BAC test, the expressed consent statute provides a driver with the right to choose between taking a breath or blood test. § 42-4-

11

1301.1(2)(a)(I). However, that statute does not require an arresting officer to notify the driver of such a choice. *See Evans v. Dep't of Revenue*, 159 P.3d 769, 771 (Colo. App. 2006). Moreover, the "extraordinary circumstances" exception generally arises only after the police officer asks a person to take either a blood or breath test and that person chooses one of those tests. § 42-4-1301.1(2)(a.5)(I). But in this case, the extraordinary circumstances themselves precluded the officer from requesting such an election and required the officer to "inform [Young] of the extraordinary circumstances and request and direct [Young] to take the [blood] test." *Id.*

¶ 27 We conclude that the extraordinary circumstances exception was triggered when the DUI officer asked Young to take a blood test, and he neither requested a breath test nor objected to the blood draw. *See* § 42-4-1301.1(2)(a)(I) (providing that if a person who is at least twenty-one years old "requests that the test be a blood test, then the test shall be of his or her blood; but, if the person requests that . . . his or her blood not be drawn, then a specimen of the person's breath shall be obtained and tested"). Because Young never requested a breath test or objected to the blood draw, the officer's decision to treat his response as a refusal

12

of the test complied with the statute, even though she did not provide Young with a choice. *See* § 42-4-1301.1(2)(a)(II). The officer told Young he had to take a blood test because the APD had suspended the use of breathalyzer testing during the COVID-19 pandemic, and we agree with the trial court that the unique situation posed by COVID-19 constituted an extraordinary circumstance that justified limiting the BAC testing to only blood tests.

¶ 28   As noted above, the accident giving rise to the charges in this case occurred in June 2020. During that time, multiple statewide COVID-19 restrictions were in place to limit the spread of the virus, including mask mandates, because the virus was spread primarily through respiratory droplets from an infected person to others in close contact. *See* Colo. Exec. Order No. D 2020 079 (May 25, 2020) (titled "Amending and Extending Executive Order D 2020 044 Safer at Home"), https://perma.cc/VX5J-3CY5.

¶ 29   Further, our supreme court has recognized that COVID-19 is a highly contagious, potentially deadly illness that triggered a global pandemic, created an "unparalleled public health crisis," and

13

substantially impacted the criminal justice system. *People v. Lucy*, 2020 CO 68, ¶ 1; *People v. Hernandez*, 2021 CO 45, ¶ 44.

¶ 30   Recognizing that extraordinary circumstances outside the control of law enforcement could arise making a particular BAC test unavailable, the expressed consent statute allows a law enforcement officer who is interacting with a suspect to determine in the first instance whether extraordinary circumstances exist. § 42-4-1301.1(2)(a.5)(I).  The statute's definition of "extraordinary circumstances" is broad, encompassing "circumstances beyond the control of, and not created by, the law enforcement officer who requests and directs a person to take a blood or breath test . . . or the law enforcement authority with whom the officer is employed." § 42-4-1301.1(2)(a.5)(IV)(A).  Indeed, the statute only precludes a law enforcement officer or agency from creating the extraordinary circumstances or relying on circumstances within their control. *See* § 42-4-1301.1(2)(a.5)(IV)(C).

¶ 31   Young does not assert that law enforcement created the extraordinary circumstances, nor does he dispute the DUI officer's explanation that, at the time of the accident, the APD had instituted a policy providing that BACs would be determined only through

14

blood tests and not breath tests, due to the risks of COVID-19 transmission in close quarters. The officer explained these circumstances to Young and asked him to take the blood test as required by the statute. *See* § 42-4-1301.1(2)(a.5)(I).

¶ 32  Considering the enormous toll the COVID-19 pandemic had on our society, we conclude that it constituted an exceptional circumstance within the scope of the expressed consent statute. The COVID-19 pandemic was not created by, or within the control of, the DUI officer or the APD, and the APD's policy formally recognized an extraordinary circumstance — the COVID-19 pandemic — that was already beyond its control.

¶ 33  Therefore, we conclude that the APD's policy was a valid response to the extraordinary circumstance of the COVID-19 pandemic, that the DUI officer did not violate the statute when she asked Young take a blood test after explaining the extraordinary circumstances, and that Young's failure to complete the blood test constituted a refusal. *See* § 42-4-1301.1(2)(a.5)(I), (III). Accordingly, we discern no error in the court's denial of Young's motion to suppress.

## IV.  Disposition

¶ 34   The judgment is affirmed.

JUDGE YUN and JUDGE KUHN concur.