Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 29, 2019

**2019 CO 29**

**No. 16SC542, *People v. Berdahl*—Fourth Amendment—Voluntary Nature in General—Validity of Consent.**

This case principally requires the supreme court to decide whether the defendant's federal and state constitutional rights were violated when a law enforcement officer required him to submit to a pat-down search before providing a consensual ride in the officer's police car.  The court now concludes that when the defendant accepted the officer's offer of a courtesy ride in the officer's car and then submitted to a brief pat down for weapons before getting into the car, he, by his conduct, voluntarily consented to the officer's limited pat-down search, and therefore, the search was constitutional.

Accordingly, the court reverses the judgment of the division below.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2019 CO 29

**Supreme Court Case No. 16SC542**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA72

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Brent Richard Berdahl.

**Judgment Reversed**
*en banc*
April 29, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
L. Andrew Cooper, Deputy Attorney General
    *Denver, Colorado*

**Attorneys for Respondent:**
Megan A. Ring, Public Defender
Britta Kruse, Senior Deputy Public Defender
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1 This case principally asks us to decide whether Brent Berdahl's federal and state constitutional rights were violated when a law enforcement officer required him to submit to a pat-down search before providing a consensual ride in the officer's police car.[1] We now conclude that when Berdahl accepted the officer's offer of a courtesy ride in the officer's car and then submitted to a brief pat down for weapons before getting into the car, he, by his conduct, voluntarily consented to the officer's limited pat-down search, and therefore, the search was constitutional.

¶2 Accordingly, we reverse the judgment of the division below.

## I. Facts and Procedural History

¶3 Early one January morning, a Weld County sheriff's deputy was dispatched to an intersection in Weld County to check on the well-being of two people whose truck had broken down. About one-half to three-quarters of a mile from the reported location of the truck, he saw a man walking alongside the roadway. The deputy activated his emergency lights and pulled over, recognizing that the man was not dressed for the

---

[1] We granted certiorari to review the following issues:

1. Whether a police officer may offer to provide a consensual ride in a patrol car to a person needing transport, but require that the person submit to a pat-down search before entering the patrol car.

2. Whether *People v. Berdahl*, 2012 COA 179, 310 P.3d 230, should be overruled, and the constitutionality of the pat-down search in this case be upheld under the principles stated in *People v. Gow*, 2016 COA 119M, __ P.3d __.

freezing temperatures and that he looked "close to hypothermic." The man, Berdahl, explained that his truck had run out of gas earlier that evening and that his significant other, J.P., was still in the truck, which was up the road. The deputy asked for identification, which Berdahl provided, and offered to let Berdahl get in the back of the deputy's patrol car to warm up. Before allowing Berdahl to do so, however, the deputy conducted a brief pat-down search for weapons.

¶4 The deputy then drove to where Berdahl's truck had run out of gas and asked J.P. if she wanted to get in the backseat of his car to warm up. She said that she did. The record does not reveal whether the deputy conducted a pat down of J.P. before she entered the car.

¶5 Upon learning that the batteries in Berdahl and J.P.'s mobile phones had died, the deputy attempted to make arrangements with several service stations in the area to see if they could deliver fuel. They all refused, however, because neither Berdahl nor J.P. had any form of payment with them.

¶6 Meanwhile, a Colorado State Patrol sergeant arrived at the scene to offer his assistance. After learning that Berdahl and J.P. had been stranded for much of the evening and that no one was available to come get or offer any assistance to them, he offered to transport them to the nearest gas station. They accepted the offer and collected their personal items from the truck. The sergeant then explained that before allowing them to get into his car, he "was just going to conduct a quick pat-down frisk for any weapons," at which point Berdahl immediately went over to the trunk of the patrol car, put his hands on the trunk, and spread his legs to allow the sergeant to conduct the pat

3

down. During this pat down, the sergeant felt a hard cylindrical object on Berdahl's left ankle and asked him to identify it. Berdahl reached down and pulled out a sock that had a methamphetamine pipe inside. The sergeant asked him if he had any other contraband, and Berdahl reached down to his other ankle, lifted his pant leg, and pulled out a little blue zipper bag, which he handed to the sergeant.

¶7 The sergeant then transported Berdahl and J.P. to the gas station. (The evidence was disputed as to whether the sergeant conducted a pat down of J.P. before she got into the car; the sergeant testified that he did, but the deputy testified to the contrary, and the trial court ultimately credited the deputy's testimony.) When they arrived at the gas station, the sergeant gave J.P. some of his own money so that she could get help, and she went into the station. The sergeant then looked inside the blue bag, where he found a small plastic baggy containing a while crystalline substance, which he believed to be methamphetamine. He then arrested Berdahl.

¶8 The prosecution subsequently charged Berdahl with possession of a controlled substance and possession of drug paraphernalia. Before trial, he moved to suppress the evidence of the pipe and drugs, arguing that the sergeant conducted the pat down at issue without a warrant and that none of the exceptions to the Fourth Amendment's warrant requirement applied.

¶9 The court then conducted a hearing on Berdahl's motion. At that hearing, the sergeant testified that he had patted down Berdahl because "[i]t's an officer-safety practice when you're putting someone in the back of your patrol car."

¶10 In a lengthy and comprehensive written order, the trial court denied Berdahl's motion to suppress. Although the court found that the pat down was not consensual because a reasonable person in Berdahl's circumstances could only have chosen to submit to the pat down in order to be transported to a safe location, the court concluded that the search was nonetheless constitutionally permissible. The court first found that due to Berdahl's physical state, the sergeant "had no real choice but to transport the defendant in his police car." The court then determined that the sergeant "had the constitutional prerogative to pat down the defendant for weapons to [e]nsure officer safety." Therefore, the court concluded that "the pat down search of the defendant was reasonable under the totality of the circumstances."

¶11 The case proceeded to trial, and the jury ultimately found Berdahl guilty as charged.

¶12 Berdahl appealed, arguing that the trial court had erred in finding that the search was constitutionally permissible. In a unanimous, published decision, a division of the court of appeals concluded that "the search was not constitutionally justified for purposes of officer safety" but remanded for further findings under the legal standard set forth in *People v. Magallanes-Aragon*, 948 P.2d 528 (Colo. 1997), to determine whether Berdahl had voluntarily consented to the pat down. *People v. Berdahl*, 2012 COA 179, ¶ 14, 310 P.3d 230, 234. The division directed that if the trial court concluded on remand that Berdahl had voluntarily consented, then the judgment would stand affirmed, and if not, then Berdahl was entitled to a new trial. *Id.* at ¶ 37, 310 P.3d at 238.

¶13    On remand, the trial court applied the *Magallanes-Aragon* standard and concluded that Berdahl had voluntarily consented to the pat-down search. In support of this determination, the court found no objective evidence of improper conduct or undue influence on the part of the officers. To the contrary, the court found that the officers had "acted properly within the scope of their duty to protect Mr. Berdahl and his companion from harm." The court explained, "While some of the subjective factors indicate that Mr. Berdahl may have felt that there was no real choice but to consent, the officers did nothing to create the predicament, did nothing to take advantage of the situation, and did nothing to coerce Mr. Berdahl into submitting to the search." Thus, the objective factors outweighed the subjective factors at issue.

¶14    Berdahl again appealed, this time arguing that the trial court did not recognize that a police officer's assertion of lawful authority constitutes objective evidence of police coercion and that the mere submission to that assertion of authority does not constitute voluntary consent. In a partially divided, unpublished opinion, a different court of appeals division agreed with Berdahl. *People v. Berdahl*, No. 14CA72, slip op. at 12 (Colo. App. June 2, 2016). In so ruling, the majority explained that "the [trial] court applied the wrong standard under *Magallanes-Aragon* in considering the interrelationship between the objective evidence of the police conduct, on one hand, and Berdahl's subjective characteristics and the circumstances of the search, on the other." *Id.* The majority stated that the court should have "appl[ied] an objective test to the totality of the circumstances of the search." *Id.* Applying this standard, the majority concluded that because the sergeant's statement that he was going to conduct a pat down to check for weapons

6

constituted a claim of lawful authority, and because Berdahl's "consent" constituted mere acquiescence to that claim, the sergeant's actions "could have appeared coercive to a reasonable person in Berdahl's position." *Id.* at 13. The majority was not persuaded otherwise by the fact that when the sergeant stated that he was going to conduct a pat down, Berdahl immediately put his hands on the trunk of the patrol car and spread his legs. *Id.* at 23. In the majority's view, Berdahl's reaction did not evince voluntary consent but rather, as noted above, constituted mere acquiescence to the sergeant's claim of lawful authority. *Id.* The division thus reversed and remanded for a new trial excluding the evidence found as a result of the pat down. *Id.* at 24.

¶15 Judge Richman specially concurred. He expressed concern that if the sergeant's statement that he "was just going to conduct a quick pat-down frisk for any weapons" constituted an assertion of lawful authority, then almost any statement by a law enforcement officer could be perceived to be such an assertion. *Id.* at 26 (Richman, J., specially concurring). He nonetheless agreed with the majority's ultimate conclusion because "the sergeant's statement did not contain any request for permission to search." *Id.* at 27.

¶16 The People petitioned this court for certiorari review, and we granted their petition.

## II. Analysis

¶17 We begin by setting forth the applicable standard of review of a trial court's suppression order and the legal principles governing the consent exception to the Fourth Amendment's warrant requirement. Applying those principles here, we proceed to

7

conclude that when Berdahl accepted the sergeant's offer of a courtesy ride and then submitted to a brief pat down for weapons before getting into the car, he, by his conduct, voluntarily consented to the pat-down search. Accordingly, the search was constitutional.

## A. Standard of Review and Applicable Legal Principles

¶18 Our review of a trial court's suppression order presents a mixed question of fact and law. *People v. Hyde*, 2017 CO 24, ¶ 9, 393 P.3d 962, 965. We defer to the trial court's factual findings if they are supported by the record, but we assess the legal effect of those facts de novo. *Id.* In our de novo review, we will correct the trial court's legal conclusions if the court applied an erroneous legal standard to the facts of the case. *People v. Munoz-Gutierrez*, 2015 CO 9, ¶ 14, 342 P.3d 439, 443.

¶19 It has been long settled that a pat down, or a "frisk," is a search. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968). The United States and Colorado Constitutions protect persons against unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, § 7. A search is presumptively unreasonable when it is conducted without a warrant unless the search falls within one of the well-established exceptions to the warrant requirement. *People v. Pate*, 71 P.3d 1005, 1010 (Colo. 2003).

¶20 One such exception exists when a person voluntarily consents to a search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 242–43 (1973). Consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker." *Munoz-Gutierrez*, ¶ 16, 342 P.3d at 444 (quoting *Schneckloth*, 412 U.S. at 225). It cannot be "the result of

circumstances which overbear the consenting party's will and critically impair his or her capacity for self-determination." *Magallanes-Aragon*, 948 P.2d at 530.

¶21 Conversely, consent is involuntary if it is "the result of duress or coercion, express or implied, or any other form of undue influence exercised [by the police] against the defendant." *Munoz-Gutierrez,* ¶ 17, 342 P.3d at 444 (quoting *Magallanes-Aragon*, 948 P.2d at 531). "Undue influence includes promises, threats, and intrusive or threatening police conduct." *Id.*

¶22 Consent may be express, or it may be implied through words, actions, or both. *See, e.g.*, *United States v. Rodriguez*, 834 F.3d 937, 940 (8th Cir. 2016) (explaining that "[c]onsent may be inferred from the defendant's 'words, gestures, or other conduct,' and the ultimate inquiry is not whether the defendant subjectively consented, but whether 'a reasonable officer would believe consent was given'") (quoting *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009)); *United States v. Sabo,* 724 F.3d 891, 893 (7th Cir. 2013) (explaining that "[i]mplied consent may be manifested verbally or nonverbally").

¶23 To assess whether a person's consent was voluntary, courts must apply an objective test that takes into account the totality of the circumstances and determines whether the defendant could reasonably have construed the police conduct to be coercive. *Munoz-Gutierrez*, ¶ 23, 342 P.3d at 445. Pertinent considerations include the defendant's age, education, and intelligence; the duration, location, and circumstances of the search; the defendant's state of mind; and any other factors that could have affected the defendant's free and unconstrained choice in consenting to the search. *Id.* at ¶ 20,

9

342 P.3d at 444. This includes whether the defendant knew that he or she had a choice, although consent can be voluntary even if the defendant did not know that he or she was free to withhold consent. *Schneckloth*, 412 U.S. at 227; *People v. Chavez-Barragan*, 2016 CO 66, ¶ 38, 379 P.3d 330, 339. In this regard, we note that although Colorado statutory law provides that peace officers must explain to suspects that they have the right to refuse consent, an officer's failure to give this advisement is only one factor in determining the voluntariness of consent. § 16-3-310(1)(b)(II), (3), C.R.S. (2018); *accord Chavez-Barragan*, ¶ 38, 379 P.3d at 339.

¶24 The essential consideration in determining the voluntariness of a defendant's consent to search is "the impact of overbearing, coercive, or deceptive police conduct on a person with the knowledge and particular characteristics of the defendant." *Magallanes-Aragon*, 948 P.2d at 533; *see also People v. Marujo*, 192 P.3d 1003, 1007 (Colo. 2008) (listing factors that may demonstrate that a reasonable, innocent person would not feel free to decline a police officer's request or to terminate an encounter).

## B. Application

¶25 Here, the trial court found that Berdahl had voluntarily consented to the pat down. In reaching this conclusion, the court recognized that certain factors, including the location of the search, the weather conditions, and Berdahl's perceptions, tended to indicate that Berdahl subjectively perceived that he had no choice but to submit to the search. The court further found, however, that other objective factors should have made clear to Berdahl that he was not under investigation and that the only reason he was being asked to consent to a pat-down search was for officer safety. As a result, the court

10

perceived no objective evidence of improper conduct or undue influence and thus determined that the search was constitutional.

¶26 Considering the totality of the circumstances in light of the factors set forth above, we agree that the pat down here was constitutional. We reach this conclusion for several reasons.

¶27 First, the record contains no evidence that either of the officers did anything to overbear Berdahl's will or in any way impair his capacity for self-determination. Nor does the record contain evidence to establish that the limited search conducted in this case was the product of duress, coercion, deception, or undue influence by the officers. Although to be sure, Berdahl found himself in difficult circumstances, the officers did not create those circumstances, and to the extent that Berdahl felt that he had no choice but to agree to the pat down as a condition of accepting a courtesy ride, that perception was not caused by any conduct of the officers. Indeed, the evidence makes clear that the officers did nothing other than offer to assist Berdahl, who needed help, while at the same time taking appropriate precautions to ensure their own safety.

¶28 Second, we perceive nothing about Berdahl's age, education, intelligence, or state of mind that would suggest that he was unable to consent voluntarily. To the contrary, Berdahl's conduct evinced his voluntary submission to the pat down. He immediately and without protest placed his hands on the trunk of the police car and spread his legs when the sergeant explained that he would need to conduct a brief pat down for weapons before allowing Berdahl to get into the police car.

11

¶29    Third, the duration of the search was brief, and we see nothing in the location of the search to suggest that it was the product of police coercion. Nor, as noted above, do the circumstances in which Berdahl found himself render the officers' conduct coercive.

¶30    Finally, although the sergeant did not expressly advise Berdahl of his right to refuse consent, we cannot say that this alone rendered Berdahl's consent involuntary. As the trial court found, with ample record support, an objectively reasonable person in Berdahl's position would have fully understood that the only reason that he was being asked to consent to a pat-down search was for officer safety, and not in connection with a coercive investigation into any suspected criminal activity.

¶31    For these reasons, we conclude that Berdahl voluntarily consented to the brief pat-down search at issue, and therefore, that search was constitutional. In light of this determination, we need not address the second issue on which we granted certiorari.

### III. Conclusion

¶32    We have frequently acknowledged that the touchstone for determining the constitutionality of a search under the Fourth Amendment is reasonableness. *See, e.g.*, *People v. Stock*, 2017 CO 80, ¶ 17, 397 P.3d 386, 391. Here, we perceive nothing about these officers' conduct that was unreasonable. To the contrary, the largely undisputed evidence in this case shows that the officers did precisely what good and conscientious law enforcement officers would do to help citizens in need, while at the same time taking appropriate precautions to ensure their own safety.

¶33    We thus conclude that when Berdahl accepted the sergeant's offer of a courtesy ride in the sergeant's car and submitted to a brief pat down for weapons before getting

12

into the car, he, by his conduct, voluntarily consented to the sergeant's limited pat-down search.  Accordingly, we hold that the search was constitutional, and we therefore reverse the judgment of the division below.