23CA1915 Peo v Vigil 02-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1915
Huerfano County District Court No. 22CR40
Honorable J. Clay McKisson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kevin James Vigil,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 20, 2025

---

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Michael J. Harris, Colorado Springs, Colorado, for Defendant-Appellant

¶ 1    Kevin James Vigil appeals his convictions for unlawful possession of a controlled substance; driving under the influence (DUI) of alcohol, drugs, or both; and driving too slowly. We affirm in part, reverse in part, and remand for a new trial on the driving too slowly charge.

## I.    Background

¶ 2    While on patrol, Captain Corey Daniels observed Vigil driving his car from a gas station onto Main Street in Walsenburg, Colorado. Vigil drove up Main Street, traveling between two and five miles an hour, before coming to a stop in the roadway opposite where Captain Daniels was parked. Captain Daniels pulled up behind Vigil after traffic had cleared. By that time, Vigil had moved his car to the shoulder. Vigil quickly exited his car and alerted Daniels that his car had broken down. State Trooper Amber Garcia saw the interaction and responded almost immediately. Deputy Jacob Jenkins and his trainee, Deputy Guess, both responded to the scene as well.

¶ 3    Captain Daniels testified at trial that Vigil appeared sweaty and was easily distracted, mumbling, nervous, disheveled, and "didn't make a whole lot of sense." The officers also saw what

1

appeared to be a white powder residue around Vigil's nostrils. After Captain Daniels instructed Vigil not to reach into his pockets several times, he eventually patted Vigil down for weapons in the interest of officer safety. Captain Daniels testified that during that pat-down he felt what he thought was a plastic bag in one of Vigil's pockets, but he didn't remove it at that time. Captain Daniels then asked Deputy Jenkins to have his canine do a sniff test of the vehicle. Deputy Jenkins reported that the canine alerted twice to the presence of narcotics in Vigil's car. Ultimately, apart from the dog sniff, no evidence from the car was presented at trial.

¶ 4　　Next, Deputy Jenkins supervised while Deputy Guess searched Vigil. Deputy Jenkins observed as Deputy Guess removed the plastic bag from Vigil's pocket. The bag contained what was eventually determined to be over twenty-five grams of cocaine.

¶ 5　　Vigil was placed in custody, and Trooper Garcia read him his *Miranda* rights. Vigil agreed to perform several roadside sobriety tests. First, Vigil permitted Trooper Garcia to perform a Horizontal Gaze Nystagmus (HGN) test — a test involving the observation of a suspect's eyes which can yield evidence of impairment, primarily by alcohol. Although Garcia didn't observe an HGN, she also had Vigil

perform a walk and turn test, which he failed. Next, Garcia had Vigil stand on one leg, a test he also failed. Last, Trooper Garcia had Vigil perform a Romberg test, which measures a person's internal clock. Vigil also failed this test. Trooper Garcia ultimately made the determination that Vigil was under the influence of drugs and returned him to Captain Daniels and his team's custody. Limited body camera footage from Captain Daniels was admitted at trial.

¶ 6    Vigil was given an expressed consent advisement and chose to submit a blood sample. Officers drove him to a nearby hospital to have his blood drawn. Vigil's blood tested positive for cocaine and cocaine metabolites.

¶ 7    Vigil was charged with possession of drug paraphernalia, unlawful possession of a controlled substance; DUI – alcohol, drugs, or both; and driving too slowly. Vigil was acquitted of possession of drug paraphernalia, convicted of the remaining charges, and sentenced to one year in community corrections.

## II.    Issues on Appeal

¶ 8    Vigil advanced four issues on appeal. Specifically, he argues that (1) there wasn't probable cause for the dog sniff or his arrest;

3

(2) while testifying, Trooper Garcia improperly commented on his invocation of his right to remain silent; (3) there was insufficient evidence presented at trial to support any of his convictions; and (4) the trial court erred when it submitted a jury instruction on driving too slowly that left out part of the governing statute. We reject his first three arguments but agree with his fourth, so we affirm Vigil's convictions for unlawful possession of a controlled substance and DUI and reverse his conviction for driving too slowly. Accordingly, we remand for a new trial on the driving too slowly charge.

## A.    Probable Cause

¶ 9    Before trial, Vigil moved to suppress all the evidence collected after the stop and canine deployment, arguing that both actions were unconstitutional due to a lack of probable cause. The court denied the motion. Vigil argues that the court erred, but we disagree.

### 1.    Standard of Review

¶ 10    When reviewing a court's ruling on a motion to suppress, "[w]e defer to the trial court's factual findings that are supported by competent evidence but review the legal effect of those facts de

novo." *People v. Ackerman*, 2015 CO 27, ¶ 10 (quoting *People v. Munoz-Gutierrez*, 2015 CO 9, ¶ 14).

¶ 11    Both the United States and Colorado Constitutions protect against unreasonable searches and seizures.  U.S. Const. amend. IV; Colo. Const. art. II, § 7.  A warrantless search is "presumptively unreasonable" unless it falls within an exception to the warrant requirement.  *People v. Berdahl*, 2019 CO 29, ¶ 19.  One such exception allows an arresting officer to search an arrestee's person and the area within their immediate control.  *People v. Gothard*, 185 P.3d 180, 184 (Colo. 2008).  In order to have probable cause, at the time an officer is making an arrest, the facts and circumstances available to a reasonably cautious officer must justify a belief that "(1) an offense has been or is being committed (2) by the person arrested."  *People v. King*, 16 P.3d 807, 813 (Colo. 2001).

## 2.    Additional Facts

¶ 12    At the suppression hearing, Captain Daniels testified that when Vigil exited his car, he was shaky, sweaty, nervous, easily confused, and not speaking in full sentences.  Captain Daniels also testified that Vigil had what appeared to be white residue around his nostrils.  Vigil's attorney argued that Vigil had safely parked his

car on the shoulder of the road and wasn't a danger or an impediment to traffic.

¶ 13    The trial court found that, based on Captain Daniels' testimony, Vigil hadn't legally parked his car on the shoulder and that his vehicle was impeding traffic. Thus, the court found that the initial stop was valid. The court also found that, based on Captain Daniels' observations of Vigil's demeanor and the white residue around his nostrils, that Daniels had probable cause "to arrest [Vigil] on suspicion of DUI. As such, Daniels was justified in searching [Vigil] without a warrant incident to his arrest."

### 3.    Analysis

¶ 14    Vigil argues that his arrest was unconstitutional because the officers didn't have probable cause to support his arrest.[1] He argues that "[f]or probable cause of DUI or [driving while ability impaired (DWAI)], there must be more than a vehicle break down, safely pulling it over as much as possible, and having consumed a substance." We disagree with Vigil's contention for three reasons.

---

[1] Because the trial court didn't rely on the dog sniff in its order denying the suppression motion, and because no evidence from Vigil's car was introduced at trial, we don't need to — and therefore don't — address whether the dog sniff was constitutional.

¶ 15    First, there was more.  Captain Daniels testified that Vigil was generally nervous, confused, and incoherent.  These descriptions of Vigil's generally nervous demeanor were proper factors for Captain Daniels to consider in determining if he had probable cause to arrest Vigil.  *See People v. Zuniga*, 2016 CO 52, ¶ 27 (exceptional nervousness can be suggestive of suspicious activity).

¶ 16    Second, the DUI statute only requires that a person drive a car while under the influence of alcohol, drugs, or both, so whether Vigil was able to pull over safely isn't dispositive as it relates to the DUI charge.  *See* § 42-4-1301(1)(a), C.R.S. 2024.  Moreover, the prosecution offered evidence to support the actual elements of the crime — (1) driving (2) while under the influence of alcohol or a drug.  *See id.*  Captain Daniels witnessed Vigil driving his car, and immediately after Vigil stopped driving, Daniels observed white residue — consistent with narcotics use — around his nose.  While we aren't deciding that these two observations constitute probable on their own, they were directly relevant to the suspected crime and supported Captain Daniels' suspicion that Vigil was driving his car while under the influence of drugs.

¶ 17    Third, the lone case Vigil cites to support his statement —

*People v. McKnight,* 2019 CO 36 — is inapplicable to this case.  In

*McKnight,* police searched a car for drugs because it was parked

outside of a house where drugs had been found and because the

vehicle's passenger had used methamphetamine in the past.  *Id.* at

¶ 56.  The court summarized this evidence as "a history of past

criminal activity in an area" and rejected it as a sufficient basis for

probable cause.  *Id.* (citation omitted).  In contrast, Captain Daniels'

testimony regarding Vigil and the circumstances surrounding the

interaction were focused on real time observations of Vigil and not

based on a criminal history.  Thus, *McKnight* is inapplicable here.

¶ 18    Accordingly, we discern no error in the trial court's order

denying Vigil's motion to suppress evidence.

### B.    Trooper Garcia's Testimony

¶ 19    Next, Vigil contends that, during her testimony at trial,

Trooper Garcia impermissibly commented on Vigil's decision to

invoke his right to remain silent.  Vigil argues that the trial court

erred by not interjecting, even without a contemporaneous objection

from Vigil's counsel.

## 1. Standard of Review

¶ 20    We review unpreserved claims of error, constitutional or otherwise, for plain error. *Hagos v. People*, 2012 CO 63, ¶ 14. For an error to be plain, it must be obvious and substantial. *Id.*

## 2. Additional Facts

¶ 21    At trial, Trooper Garcia testified that she read Vigil his *Miranda* rights, which included the right to remain silent:

> [Prosecutor:] Okay. Did you place Mr. Vigil into custody?
>
> [Trooper Garcia:] I did not.
>
> [Prosecutor:] Okay. Did you ever advise him of his *Miranda* rights?
>
> [Trooper Garcia:] I did.
>
> [Prosecutor:] Okay. And what was his response?
>
> [Trooper Garcia:] At the time, Mr. Vigil was uncooperative. He would finish the *Miranda* for me, basically, would finish my sentences. And he said he would plead the Fifth, and he understood his rights, but he was willing to cooperate and willing to do the roadside[] [sobriety tests].

## 3. Analysis

¶ 22    Vigil argues that Trooper Garcia's comments related to the invocation of Vigil's right to remain silent, but the record

contradicts his assertion. The context of Trooper Garcia's comment implies that Vigil was being uncooperative by *not* actually remaining silent. Immediately following her statement that Vigil was uncooperative, Garcia explained that Vigil interrupted her attempts to *Mirandize* him by finishing her sentences. Refusing to remain silent isn't the same as invoking one's right to remain silent. *People v. Cerda*, 2024 CO 49, ¶ 24 (suspect must clearly articulate the desire to remain silent). Thus, we discern no error, much less plain error, by the trial court in permitting Trooper Garcia to testify as she did.

### C. Sufficiency of Evidence

¶ 23 Next, Vigil contends that the prosecution failed to introduce evidence sufficient to support his convictions for unlawful possession of a controlled substance and DUI. Again, we disagree.

### 1. Standard of Review

¶ 24 Sufficiency of the evidence claims can be raised at any time and are reviewed de novo. *McCoy v. People*, 2019 CO 44, ¶ 27. When considering a sufficiency of the evidence challenge, we view the evidence admitted at trial in the light most favorable to the

prosecution to determine if it is sufficient in both quantity and quality to sustain a conviction. *Johnson v. People*, 2023 CO 7, ¶ 13.

### 2. Analysis

#### a. Unlawful Possession of a Controlled Substance

¶ 25     To obtain a conviction for unlawful possession of a controlled substance, the prosecution must prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance. *See* § 18-18-403.5(1), (2)(a), C.R.S. 2024.  Vigil argues the evidence was insufficient to sustain his unlawful possession of a controlled substance conviction because there was no evidence presented at trial that established where the cocaine was found, and therefore, there was no evidence that he knowingly possessed the cocaine. The record contradicts this argument.

¶ 26     At trial, Deputy Jenkins testified that he was supervising his trainee, Deputy Guess, as Guess searched Vigil, located the cocaine, and handed it to Jenkins.  And a moment later, after watching a video of the search, Deputy Jenkins was even more specific:

> [Prosecutor:] Deputy Jenkins, just a few
> moments ago in that video, you could see
> Deputy Guess hand you something?

[Deputy Jenkins:] Yes.

[Prosecutor:] What did he hand you?

[Deputy Jenkins:] From Mr. Vigil's left pocket, he removed and handed me a clear plastic baggie that had numerous other baggies inside that contained what appeared to be narcotics.

¶ 27 This portion of Deputy Jenkin's testimony, if credited by the jury, establishes that he was a witness to the discovery of the cocaine in one of Vigil's pockets. Deputy Jenkin's testimony is sufficient in both quantity and quality to support a finding that Vigil knowingly possessed the cocaine that was found in his pocket.

### b. Driving While Under the Influence

¶ 28 Vigil next argues that the evidence presented at trial was insufficient to support his conviction for DUI because the roadside tests didn't account for Vigil being overweight, Vigil's overall safe driving, the lack of any depressant signs, and his proper conduct with law enforcement officers.[2] We disagree for three reasons.

---

[2] Vigil also asserts that the evidence was insufficient because he doesn't appear to be impaired on the body camera footage introduced at trial. Because we find the evidence was sufficient to support Vigil's conviction for DUI, we need not address whether he appeared impaired on the video.

12

¶ 29    First, Vigil's ability to conduct himself properly with law enforcement officers doesn't negate any element of DUI that the prosecution needed to prove.  A person who drives a motor vehicle under the influence of drugs or alcohol commits DUI.  § 42-4-1301(1)(a).

¶ 30    Second, Vigil doesn't explain how his weight would have affected his ability to perform the roadside sobriety maneuvers, much less the Romberg test, which measures a person's internal clock.  Trooper Garcia testified that she instructed Vigil to stand, tilt his head back, close his eyes, and estimate when thirty seconds had passed.  Vigil estimated that thirty seconds had passed after eighteen seconds and swayed back and forth, leading Garcia to conclude he was under the influence.  Vigil offers no reason why his weight would make him unable to accurately measure the passing of time.

¶ 31    Third and most importantly, the prosecution presented expert testimony from Arielle Burdulis, the forensic scientist that tested Vigil's blood sample for cocaine.  Burdulis testified that — at the time of the blood draw — Vigil's blood contained 174 nanograms of cocaine per milliliter and more than 1,000 nanograms of

benzoylecgonine per milliliter. Burdulis testified that the body produces benzoylecgonine when breaking down cocaine, and its presence in the blood indicates that a person recently ingested cocaine.

¶ 32    Burdulis also testified to the effects of cocaine on a person's ability to function. She testified that driving was a task that requires a person to focus on more than one thing at a time and that "cocaine can negatively affect someone's ability to do that." Burdulis testified that, in its initial stimulant phase, cocaine can cause impatient, erratic, and risky driving behavior like weaving through traffic, failing to yield at a stop light, or speeding. Burdulis further testified that, in its later depressant stage, cocaine can cause a person to cycle "between being alert and awake and dozing off to sleep" while driving. She said this phase could also be accompanied by "disorientation, overall general fatigue, and poor ability to focus and concentrate on the road."

¶ 33    Burdulis' testimony, in tandem with Captain Daniels' earlier testimony — that Vigil was driving his car and was confused, incoherent, and nervous shortly before his blood was drawn — and Trooper Garcia's testimony — that she concluded Vigil was under

14

the influence because he had failed all but one of his roadside sobriety tests — if credited by the jury, established all the elements of DUI. Therefore, this testimony constitutes sufficient evidence in both quantity and quality to support the jury's conclusion that Vigil was guilty of DUI.

## D. Driving Too Slowly

¶ 34　Finally, Vigil contends that the trial court erred by tendering a jury instruction that left out the last element of driving too slowly and that the prosecution offered insufficient evidence to sustain his conviction for that same offense. We agree that the instruction was erroneous and necessitates reversal but disagree that insufficiency of the evidence bars retrial of that charge.

## 1. Jury Instruction

¶ 35　We review jury instructions as a whole de novo to determine if they accurately state and inform the jury of the law. *People v. Sloan*, 2024 COA 52M, ¶ 26. While trial courts enjoy "broad discretion to determine the form and style of jury instructions," *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011), "[a] jury instruction should substantially track the language of the statute describing the crime," *People v. Weinreich*, 119 P.3d 1073, 1076 (Colo. 2005).

15

¶ 36    The statute that Vigil was charged with — driving too slowly— provides, as follows: "No person shall drive a motor vehicle on any highway at such a slow speed as to impede or block the normal and reasonable forward movement of traffic, except when a reduced speed is necessary for safe operation of such vehicle or in compliance with law." § 42-4-1103(1), C.R.S. 2024.

¶ 37    There is no model jury instruction for the charge of driving too slowly, so the People crafted one and tendered it to the court and defense counsel more than two months before trial. Vigil never objected to the People's proposed instruction. The court ultimately gave the following instruction for driving too slowly:

> The elements of driving too slowly are:
>
> 1. That the defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. drove a motor vehicle or vehicle,
>
> 4. on a highway of the State
>
> 5. at such a slow speed as to impede or block the normal and reasonable forward movement of traffic.
>
> After considering all of the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you

16

should find the defendant guilty of driving too slowly.

After considering all of the evidence, if you decide the prosecution has failed to prove any one or more of the elements beyond a reasonable doubt, you should find the defendant not guilty of driving too slowly.

¶ 38 Vigil contends that the court plainly erred in instructing the jury on the charge of driving too slowly by omitting from its instruction the "except when" portion of the statute that provides driving slowly isn't an offense when (1) "a reduced speed is necessary for safe operation" of the defendant's vehicle, or (2) the slow travel is "in compliance with law." § 42-4-1103(1).

¶ 39 We review unpreserved challenges to jury instructions for plain error. *See People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001). Plain error is error that is both obvious and substantial. *Hagos*, ¶ 14. An error is obvious if, among other things, it contravenes a statute. *People v. Pollard*, 2013 COA 31M, ¶ 40. An error is substantial if it so undermines the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. *Hoggard v. People*, 2020 CO 54, ¶ 13. Concerning an unpreserved jury instruction challenge, the defendant must show not only that

the erroneous instruction affected a substantial right but also that the record reveals a reasonable possibility that the error contributed to his conviction. *Id.*; *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

¶ 40 We begin our analysis by determining if the instruction the court gave accurately stated the law. We conclude it didn't. It's undisputed that the instruction didn't track the language of the driving too slowly statute, as it omitted its "except when" provisions. *See, e.g., Hoggard*, ¶ 34. Not only was this error, it was obvious error. *See id.*; *People v. Sloan*, 2024 COA 52M, ¶ 35.

¶ 41 The People baldly contend, without citation to any case or any meaningful analysis, that "this clause of the statute appears to be a defense to the traffic offense rather than an element of the charge of driving too slowly that the prosecution has to prove beyond a reasonable doubt." Because the People don't develop this

argument, we decline to address it.[3] *See People v. Liggett*, 2021

COA 51, ¶ 53 (appellate courts don't address undeveloped

arguments), *aff'd*, 2023 CO 22.

¶ 42    The next step in our analysis is to determine if the jury

instruction's erroneous omission of the "except when" provisions

necessitates reversal.  "[A]n erroneous jury instruction does not

normally constitute plain error where the issue is not contested at

---

[3] If we were to address the People's contention that the omitted provisions set out an affirmative defense and not elements of the offense, we would be skeptical of the argument's soundness.  An affirmative defense "admit[s] the doing of the act charged but seek[s] to justify, excuse, or mitigate it." *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (citing *People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo. 1989)).  Here, the statute is crafted such that driving too slowly isn't a violation when doing so is (1) "necessary for safe operation" of the defendant's vehicle or (2) "in compliance with law." § 42-4-1103(1), C.R.S. 2024.  Thus, the "except when" provisions appear more akin to elements than an affirmative defense.  Moreover, even if they did constitute an affirmative defense, there was *some* evidence presented at trial that Vigil's slow travel was necessary for the safe operation of his vehicle — namely, that he was experiencing mechanical difficulties.  Thus, he would have been entitled to an affirmative defense instruction on at least the first of two omitted provisions, and the People therefore would have had to disprove that provision beyond a reasonable doubt to sustain Vigil's driving too slowly conviction.  *See, e.g., People v. Jacobson*, 2017 COA 92, ¶ 15 (discussing the low evidentiary threshold that a defendant has to meet to be entitled to an affirmative defense instruction); *People v. Platt,* 170 P.3d 802, 806 (Colo. App. 2007) (same), *aff'd*, 201 P.3d 545 (Colo. 2009).

19

trial or where the record contains overwhelming evidence of the defendant's guilt." *Thompson v. People*, 2020 CO 72, ¶ 54 (quoting *Miller*, 113 P.3d at 750). Neither of those conditions is satisfied here.

¶ 43 First, the issue of whether it was safe for Vigil to drive faster was contested at trial. For instance, the body camera video admitted at trial showed Vigil telling Captain Daniels that he was having car trouble. Based on this, Vigil's counsel argued that Vigil was unable to drive faster because his car had broken down. Second, the evidence presented at trial was far from overwhelming with respect to whether it was safe for Vigil to drive faster. Indeed, beyond the body camera footage described above, the People didn't present any evidence concerning whether Vigil's slow speed was "necessary for safe operation" of his vehicle. Therefore, we conclude that the court's instructional error constituted plain error necessitating reversal. *See, e.g., Sloan,* ¶ 57.

¶ 44 But our inquiry doesn't stop here because if the evidence presented at trial was insufficient, the People would be barred from retrying Vigil on this charge. That is where we turn our attention next.

## 2. Sufficiency of the Evidence

¶ 45    To begin, the evidence presented at trial was sufficient to prove each of the elements of driving too slowly as that offense was defined by the court's instruction.  As the jury was instructed, all it had to find had been proven beyond a reasonable doubt to convict Vigil of driving too slowly was that he "drove a motor vehicle or vehicle . . . on a highway of the State . . . at such a slow speed as to impede or block the normal and reasonable forward movement of traffic."  There was sufficient evidence presented at trial to prove all these elements.  And Vigil doesn't contend otherwise.

¶ 46    Instead, Vigil contends that the evidence was insufficient because the People failed to present any evidence to prove one of the *omitted* elements — namely, that he wasn't driving slowly because a reduced speed was necessary for safe operation of the defendant's vehicle.  Whether the evidence presented at trial would have been sufficient to prove the omitted element had it been included in the instructions is a close call.  Indeed, as both Vigil and the People acknowledge in their briefs, very little attention was afforded to any aspect of the driving too slowly charge by either side

at trial given the offense's relative lack of gravity compared to the other charges Vigil faced.

¶ 47 But we don't have to reach that question because we conclude that failure to prove an *omitted* element — one that the People's proposed instruction failed to include well in advance of trial without objection by the defense — doesn't bar retrial. This is so because "whether or not the Government will be able to carry its burden of proof on retrial, the fact remains that retrial is the Government's first 'bite at the apple' to prove its case under the correct legal standard." *Plemmons v. People*, 2022 CO 45, ¶ 55 (alteration omitted) (quoting *McDonald v. People*, 2021 CO 64, ¶ 67); *cf. United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir. 1995) (holding that the prosecution wasn't barred from retrying the defendant when it failed to prove an element that was redefined following trial). Accordingly, while we reverse Vigil's conviction for driving too slowly, we reject the contention that a retrial of Vigil on that charge is barred under the double jeopardy clause for lack of sufficient evidence.

### III. Disposition

¶ 48 For the reasons discussed above, we affirm Vigil's convictions for unlawful possession of a controlled substance and DUI, reverse his conviction for driving too slowly, and remand the case for a new trial on the driving too slowly charge.

JUDGE KUHN and JUDGE SCHUTZ concur.